UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


STEPHANIE RUSS TURNER,

     Plaintiff,

v.                                           4:12cv510-WS

STATE OF FLORIDA, DEPARTMENT OF
CORRECTIONS and ART ROUNTREE,

     Defendants.

_____

## ORDER GRANTING THE FLORIDA DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT

Stephanie Russ Turner sues her former employer, the Florida Department of Corrections ("FDOC"), alleging a federal claim for unlawful retaliation and a state claim for false arrest.  Before the court at this time is FDOC's motion for summary judgment.  Doc. 32.  Turner has responded (doc. 39) in opposition to the motion, and the parties have been advised (doc. 44) that the motion would be taken under advisement as of a date certain.

I.

Turner worked as a probation officer for FDOC from 1988 until 2011.  At

the time of her termination on July 29, 2011, Turner held the position of Correctional Probation Officer ("CPO") Specialist.  Her duties as a CPO Specialist included supervision of high-risk sex offenders.  Because of the potential danger posed to the public by such offenders and because of the higher level of supervision and more stringent policies and legislative guidelines applicable to such offenders, FDOC typically assigns sex offenders to an experienced senior probation officer, usually a CPO Specialist.

In June 2008, Turner filed suit[1] against FDOC, alleging that FDOC disciplined her and failed to promote her based on her race and gender and in retaliation for her having filed charges—alleging race discrimination and retaliation—with the Equal Employment Opportunity Commission in 2002 and 2005 respectively.  She was working as a CPO II when she filed the 2008 lawsuit. The case was dismissed after the parties filed a notice of settlement in July 2009.

Turner maintains here that she experienced retaliatory "occurrences" after she filed suit in 2008.  For example, she asserts that her supervisors began (1) treating her rudely and with contempt, (2) assigning her additional tasks not assigned to her fellow coworkers, (3) singling her out by monitoring her caseload,

---

[1]  The 2008 lawsuit was originally filed in Leon County Circuit Court and was later removed to this federal court.

Case 4:12-cv-00510-WS-CAS   Document 48   Filed 04/10/14   Page 3 of 14

Page 3 of  14

(4) requiring her—but not others—to submit a travel itinerary to all supervisors, not just her direct supervisor, (5) reprimanding her for failing to complete—prior to her transfer to another office—a violation report that she was assured would be handled by others after her transfer, and (6) requiring her to respond in writing to allegations that she improperly placed felony offenders in the suspense category when, in fact, she lacked the authority to place any offenders in the suspense category.  Despite these "occurrences," Turner suffered no reduction in pay or benefits, no reduction in responsibilities, and no discipline from the time she filed suit in 2008 until she was terminated in July 2011.  Indeed, after she filed the 2008 suit, she was promoted to CPO Specialist, and she received "Above Expectation" performance evaluations for the years 2008-2010.

The events leading to Turner's termination began with the questioning of an offender during a February 1, 2011, law enforcement sweep.  During that sweep, officers from a number of different law enforcement agencies conducted random searches of the residences of high-risk sexual offenders.  Turner was alerted about the planned sweep at a staff meeting held on or about January 7, 2011, and was ordered—as were all staff at the meeting—not to disclose information about the sweep to any offenders.

During the February 1 sweep, Correctional Probation Supervisor ("CPS")

Mark Chambers made contact with James Clarke, a sex offender under Turner's supervision.  Clarke informed Chambers that he had learned about the sweep from Turner and had been expecting the law enforcement visit to his home.  Chambers then questioned Clarke about when he had last seen Turner at his home.  Clarke responded that he could not remember but thought he had not seen Turner for a couple of months.  A call to the probation office revealed that Turner's field notes reflected a visit to Clarke's home on the evening of January 31, 2011, one day before the sweep.  Clarke denied that Turner had been to his home the previous evening, as did Clarke's son and daughter, both of whom had been at the house at the time.  Concerned by what he had learned from Clarke, Chambers completed an incident report and forwarded it to CPS Randy Windham for investigation.

    After receiving Chambers's incident report, Windham interviewed each of the twelve sex offenders Turner purportedly visited on January 31, 2011.  Of the twelve who were interviewed, six denied having seen Turner on January 31, and each of those six provided notarized one-sentence statements to that effect. Windham forwarded those six statements along with Turner's visitation documentation to the Circuit Administrator, who, in turn, forwarded the information to the Office of the Inspector General ("OIG") for investigation.

    Inspector General Art Rountree conducted the investigation for OIG.  After

questioning a number of witnesses, including Chambers and each of the six

offenders who claimed that Turner failed to visit them on January 31, 2011,

Rountree concluded that Turner failed to make the two required home visits to

these six sex offenders during January 2011.  He also concluded that Turner

submitted false records of her visits and improperly sought reimbursement for the

mileage expense related to the visits she did not conduct.  He was not able to verify

that Turner had given Clarke advance notice about the sweep.  In fact, contrary to

what Clarke had reported to Chambers on the evening of the sweep, Clarke

recanted, telling Rountree that Turner did *not* inform him about the sweep, that he

had instead learned of the sweep from watching the news on television.

Rountree did not interview Turner during the investigation because the

FDOC had an unwritten "no-interview" practice at that time for officers facing

criminal charges.  This practice started with an instruction from OIG and was

intended to eliminate the need to disclose to the suspect officer any documents

related to a criminal investigation before the investigation was complete.   During

the time that the "no-interview" practice was in effect, Rountree completed each

investigation in accordance with that policy.  The practice ended sometime after a

new Inspector General was appointed in late 2011.

Having concluded that Turner failed to visit all of the offenders she claimed

to have visited on January 31, 2011, Rountree prepared a probable cause affidavit for Assistant State Attorney Greg Wilson to review.  Wilson agreed that probable cause existed to arrest Turner for falsifying records and for petit theft.  Believing that Turner's actions were especially egregious given the heightened monitoring required for high-risk sex offenders, Wilson advised Rountree that the State Attorney's Office would prosecute the case.  A few days later, FDOC fired Turner.

Turner was ultimately charged by information with multiple counts of falsifying records and one count of petit theft.  On May 1, 2012, a jury returned "Not Guilty" verdicts as to all counts.  Turner thereafter filed this lawsuit, alleging—among other things—that FDOC took action against her in retaliation for her having voiced opposition to FDOC's unlawful employment practices.  She seeks relief under Title VII of the Civil Rights Act of 1964, as amended, Title 42, United States Code, Sections 2000e—2000e-17.[2]

---

[2]  Turner includes only one federal claim in her complaint—retaliation in violation of Title VII.  In her response to FDOC's motion for summary judgment, Turner concedes that she "has not brought a separate hostile work environment claim."  She nonetheless addresses such a claim in her response, calling it a claim for "hostile work environment retaliation," which she appears to confuse with a claim for retaliatory hostile work environment.  Because Turner has not included a claim for retaliatory hostile work environment in her complaint, nor has she received leave to amend her complaint to add such a claim, this court addresses only the federal claim that *is* included in Turner's complaint, namely, the retaliation claim.

II.

Where, as here, a plaintiff uses circumstantial evidence to prove a Title VII

retaliation claim, this court applies the burden-shifting approach articulated in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell

Douglas, the plaintiff bears the initial burden to establish a *prima facie* case of

retaliation.  To demonstrate a *prima facie* case of retaliation under Title VII, a

plaintiff must show that (1) she engaged in statutorily-protected activity; (2) she

suffered a materially adverse action; and (3) there was a causal link between the

protected activity and the materially adverse employment action.  Gowski v. Peake,

682 F.3d 1299, 1311 (11th Cir. 2012).

To establish a causal connection, a plaintiff "must show that the relevant

decisionmaker was aware of the protected conduct and that the protected activity

and the adverse actions were not wholly unrelated."  Kidd v. Mando American

Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (internal quotation marks omitted).  A

plaintiff may show that the events are "not wholly unrelated" by showing that there

was a close temporal proximity between the employer's discovery of the protected

activity and the adverse action.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.

2004).  "But temporal proximity, without more, must be very close."  Schmidt v.

City of Atlanta, No. 13-11468, 2014 WL 930831, at *2 (11th Cir. Mar. 11, 2014);

see also Higdon, 393 F.3d at 1220-21 (holding that a three-month period between

the protected conduct and the adverse action was not sufficient to allow a

reasonable inference of causality); Thomas v. Cooper Lighting, Inc., 506 F.3d

1361, 1364 (11th Cir. 2007) (concluding that a three to four month disparity

between the statutorily protected expression and the adverse employment action

was not enough to demonstrate a causal connection); Simpson v. State of Alabama

Dep't of Human Res., 501 F. App'x 951, 954 (11th Cir. 2012) (noting that "[w]here

the protected activity at issue is the filing of a discrimination lawsuit, the relevant

date in determining temporal proximity of the protected activity and any materially

adverse action is the *filing* of the lawsuit, not the entry of dispositive orders in the

case by the district court) (emphasis in original).

　　If the plaintiff establishes a *prima facie* case, the burden shifts to the

employer to proffer a legitimate non-retaliatory reasons for the adverse action.

Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  If the

employer satisfies its burden of production, the burden then shifts back to the

plaintiff to demonstrate that the employer's preferred reason for the adverse action

was a pretext for retaliation.  Id.  The plaintiff bears the ultimate burden of proving

her retaliation claim "according to traditional principles of but-for causation."

Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

The but-for standard "requires proof that the unlawful retaliation would not have

occurred in the absence of the alleged wrongful action or actions of the employer."

Id.

The parties here do not dispute that Turner has established the first two

elements of a *prima facie* case of retaliation.  Turner engaged in statutorily-

protected activity when she filed suit against FDOC in 2008, and she suffered a

materially-adverse employment action when she was fired more than three years

later on July 29, 2011.[3]  Whether Turner has demonstrated a causal connection

between the protected activity and her termination *is* disputed.

FDOC contends—and the court agrees—that Turner has produced no

evidence to demonstrate a causal connection between her lawsuit and her

termination.  In contrast, FDOC has produced evidence that suggests just the

opposite.  For example, FDOC has shown that, in the three years after she filed her

2008 lawsuit, Turner was not only promoted to a senior position, but she also

---

[3]  Turner contends that, in retaliation for her 2008 lawsuit,  FDOC subjected
her to severe and pervasive harassment by several different supervisors over the
course of more than two years.  The court finds, however, that none of the
harassing "occurrences" about which she complains rises to the level of a
"materially adverse action" for purposes of a retaliation claim.  None of the many
alleged "occurrences" resulted in any discipline, reduction in pay, reduction in
benefits, reduction in responsibilities, or negative input on Turner's above-average
performance evaluations.  The only "materially adverse action" taken by FDOC
was its termination of Turner on July 29, 2011.

received three above-average annual performance evaluations.  CPS Chambers

completed one of those evaluations in April 2009, rating Turner's performance as

"Exceptional" in six of fifteen categories.  At the end of his evaluation, Chambers

commented that "Officer Turner is a valued officer [and] [h]er years of experience

are an asset to the department."  While it is true that Turner experienced some

negative "occurrences" during the years following the filing of her lawsuit, none of

these "occurrences" resulted in a demotion, a reduction in pay or benefits, or a

change in job responsibilities.  Quite simply, FDOC's post-lawsuit, pre-termination

actions were not indicative of an employer that was bent on retaliating against

Turner.

Coincidentally, the officer who gave Turner a glowing performance

evaluation in 2009 also submitted the 2011 incident report which led to the

investigation resulting in Turner's termination.  There is nothing in the record to

suggest that the reporting officer—Chambers—had any intent to retaliate against

Turner based on her 2008 lawsuit.  There is also nothing in the record to suggest

that Art Rountree, the Inspector General who conducted the investigation triggered

by Chambers's report, had any intent to retaliate against Turner.  While Rountree

testified that he learned about Turner's 2008 lawsuit "either during or after" his

investigation (he could not remember which), he emphatically denied that the

lawsuit played any part in his investigation.

As for temporal proximity, the three year gap between the filing of Turner's 2008 lawsuit and her termination in 2011 is far too wide to establish a causal connection under Eleventh Circuit precedent.  See, e.g., Hall v. Dekalb Cnty. Gov't, 503 F. App'x 781, 790 (11th Cir. 2013) (finding no causal connection when there was a one-year gap between protected activity and adverse action); Boyland v. Corr. Corp. of America, 390 F. App'x 973, 974 (11th Cir. 2010) (finding a two-and-a-half year gap "well outside the time range for which this Court will infer causal connection from temporal proximity").  That Turner experienced several some non-material "occurrences" during that gap does not help Turner because the record is devoid of evidence to demonstrate that those "occurrences" were motivated by a retaliatory intent on FDOC's part.  Indeed, it defies common sense to think that FDOC would promote Turner and give her three years' worth of excellent performance evaluations while, at the same time, it was using criticism, humiliation, and reprimands as a means to sabotage her employment for retaliatory reasons.  Despite Turner's arguments to the contrary, the court finds that Turner has failed to show that her 2008 lawsuit and her termination were causally linked.

Even assuming, for the sake of argument, that Turner has provided enough evidence to support a *prima facie* case of retaliation, she fails to show that FDOC's

articulated legitimate reason for the termination was pretextual.  To show that

FDOC's proffered explanation was not the true reason for its decision to terminate

Turner, Turner must show "weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions" in FDOC's rationale."  Holland v. Gee, 677 F.3d

1047, 1055-56 (11th Cir. 2012) (internal quotation marks omitted).  "Federal courts

do not sit as a super-personnel department that reexamines an entity's business

decisions . . . or questions whether employment decisions are prudent or fair."

Usry v. Liberty Reg'l Med. Ctr., Inc., No. 13-12406, 2014 WL 1101224, at *5

(11th Cir. Mar. 21, 2014) (internal quotation marks and citation omitted).

"Provided that the proffered reason is one that might motivate a reasonable

employer, an employee must meet that reason head on and rebut it, and the

employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

(internal quotation marks omitted).

       According to FDOC, Turner was fired because she failed to make the

required number of visits to several high-risk sex offenders in January 2011, then

falsely represented in official documents that she made those visits.  In support of

her contention that FDOC's articulated reason was pretextual, Turner points to an

investigation that she says was "unusual," "faulty," "a work of fiction," and "a

sham."  In essence, she does little more than quarrel with the competency of

FDOC's investigation and the wisdom of its reason for termination.  Importantly, she fails to demonstrate with competent evidence (1) that FDOC's investigation was, in fact, a sham; (2) that the result of FDOC's investigation was either fabricated or false, and (3) that FDOC's reliance on the result of its investigation was contrived, misplaced, or ingenuine.

Also in support of her pretext argument, Turner points to other FDOC employees who were purportedly treated differently for similar offenses, including some employees who were allowed to resign or retire without facing criminal charges for falsification of documents.[4]  She has produced no evidence, however, that these other employees held positions comparable to Turner's position as a supervisor of high-risk sex offenders.  Absent such evidence, Turner's reliance on the alleged "comparators" is misplaced.

In sum, the court finds that Turner has fallen far short of establishing that FDOC's reason for firing her in 2011 was a pretext for retaliation based on a lawsuit filed three years earlier.

### III.

Because Turner has failed to submit evidence from which a reasonable jury

---

[4]  It should be noted that the State Attorney—not FDOC—made the decision to prosecute Turner.

could find that FDOC fired her in retaliation for the lawsuit she filed in 2008, FDOC is entitled to summary judgment as to Count I of Turner's complaint.

Accordingly, it is ORDERED:

1.  FDOC's motion for summary judgment (doc. 32) is GRANTED only as to Turner's retaliation claim (Count I).

2.  The clerk shall remand the state law claims asserted in Counts II, III, and IV of Turner's complaint to the state court from which this case was removed.  <u>See</u> 28 U.S.C. § 1367(c)(3).

3.  The clerk shall enter judgment stating: "As to Count I of Stephanie Russ Turner's complaint, judgment is entered in favor of the Florida Department of Corrections."

4.  Costs shall be taxed against the plaintiff.

DONE AND ORDERED this  10th  day of    April           , 2014.


s/ William Stafford
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE